## THE SINALOA.

### LARSEN v. LINDVIG et al.

(District Court, N. D. California, S. D. August 23, 1923.)

Nos. 17558, 17564.

1. Seamen ⚖➤21, 29(1)—Wages held recoverable by seamen left in foreign port while they were consulting consul.

Where sailors were subjected to abuse, and one was assaulted by mate, by captain's orders, and he and another were ordered from the ship in a foreign port, whereupon they and others left to consult the vice consul of their country, and the vessel sailed without any signal or notification, wages *held* recoverable, and the assaulted seaman entitled to recover for the assault.

**2. Ambassadors and consuls ⬅➡5—Foreign consul held without jurisdiction of dispute regarding round voyage from San Francisco.**

Under Comp. St. § 8382a, terminating certain provisions of treaties, section 13 of Treaty with Norway and Sweden, giving consuls the right to sit on disputes between captains and crews of vessels of those nations, *held* inapplicable where seamen shipped for round voyage from San Francisco on Norwegian vessel, which was being operated by resident American citizens.

In Admiralty. Libels by Alf Larsen against A. O. Lindvig and others, and by Henning Jorgensen and others against the steamship Sinaloa, her tackle, etc., claimed by A/S Baja California, a corporation. Decree for libelants in each case.

Frederick L. Berry, of San Francisco, Cal., for libelant.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for respondents.

PARTRIDGE, District Judge. In the matter of the Sinaloa there are two libels: One, No. 17558, is for the wages of certain members of the crew; the other, No. 17564, is for an assault by the mate upon one Larsen. The two cases were tried together by consent.

[1] The evidence satisfactorily shows, to my mind, at least, that Larsen was called to the bridge when the ship was at sea; when he arrived there, the captain ordered the mate to strike him between the eyes. The mate thereupon beat him violently, loosening his teeth, and injuring him so he was incapacitated for several days. Various sailors testified they saw his teeth loosened and his shirt covered with blood. On the arrival of the ship at Corinto, in Nicaragua, the captain ordered Larsen and one other sailor off the ship. It is in evidence, also, that the captain, as well as some of the crew, was drunk, and the sailors were subjected to the vilest kind of abuse.

Larsen and the other man were ordered off the ship, and five of the other libelants left the vessel at Corinto and went to the home of the Norwegian vice consul, which was situated up a hill from the wharf, and, as described, about five blocks from where the ship lay. It was early in the morning, and they had some difficulty in finding the Norwegian vice counsul, and it was an hour and a half before they got him. When they finally saw the vice consul, he told them to return to the ship and take up their complaints with the Norwegian vice consul upon their arrival in San Francisco. It was in evidence, and not denied, that various of these sailors had demanded portions of their wages at this port and other ports, and had been refused, except a very small amount, not over $2 or $3 per man.

The sailors thereupon returned to the dock, but the ship had sailed without them. So far as the evidence shows, there was no signal given, and no notification to the sailors. The men were thus left stranded without funds in what is described as a small town, where the people spoke nothing but Spanish, and, as a matter of fact, the men were compelled to beg their bread for a period of three weeks, until they were returned to the port of San Francisco by the consul.

I have recently had occasion to consider in the case of the Barkentine Rolph, 293 Fed. 269, and to declare as emphatically as I could that American seamen on American ships must not be subjected to such treatment. The acts of Congress as applied to American sailors cover the situation thoroughly.

[2] It is contended in this case, however, that I should decline jurisdiction because these men were foreigners on a foreign vessel. Several of them were Norwegians or Swedes, two or three—two, I believe—Danes, and one claimed to be an American citizen. The argument is based upon the provisions of the protest of the government of Norway, filed here amongst the papers, and upon article 13 of the Treaty between the United States and Norway and Sweden (8 Stat. 346), which gives to consuls and vice consuls of the latter countries the right to sit upon any dispute between captains and crews of vessels of those nations.

However, these men shipped in San Francisco for a round voyage to Nicaraguan ports, to be returned and discharged in San Francisco, the port of their embarkation. While it is true that the Sinaloa is a Norwegian vessel, still at the time she was being operated by a coterie of American citizens, who are resident in San Francisco, and who are respondents in this case. It seems to me that under such circumstances the force of a treaty with Norway and Sweden is destroyed by the provisions of section 8382a of the Compiled Statutes. That section was enacted March 4, 1915, and specifically abrogates any treaty provisions in conflict with the provisions of this act. In my opinion, therefore, the provisions of the treaty in question, if they can be held to deprive this court of jurisdiction, under the circumstances in this case, are in conflict with the provisions of the act.

The decree in each case, therefore, will be in the libelants, with the usual reference to the commissioner for determining the amount of wages due and the damages for the assault upon the libelant Larsen.